**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

DEAVONIE L. REYNOLDS, )
)
Plaintiff, )
)
vs. ) Case No. 4:20-CV-1124 JAR
)
ANN PRECYTHE, et al., )
)
Defendants. )

**MEMORANDUM AND ORDER**

This matter is before the Court upon multiple motions from self-represented plaintiff Deavonie Reynolds. Plaintiff brings this civil action under 42 U.S.C. § 1983 for alleged violations of his civil rights. Plaintiff seeks leave to commence this action without prepaying fees and costs (ECF No. 2), he requests appointment of counsel (ECF No. 4), and he asks the Court to grant a preliminary injunction and temporary restraining order (ECF No. 5). Having reviewed the motion to proceed without prepayment, and the financial information submitted in support, the Court will grant the motion and assess an initial partial filing fee of $78.83. *See* 28 U.S.C. § 1915(b)(1). Furthermore, for the reasons discussed below, plaintiff's other motions will be denied, and the Court will direct plaintiff to file an amended complaint on a court-provided form, in accordance with the Court's instructions.

**Initial Partial Filing Fee**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month

period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

In his signed and sworn motion, plaintiff states that he is not employed and has no money in his prison account, but that he does get gifts from family and friends from "time to time." ECF No. 2. However, in support of the instant motion, plaintiff submitted an inmate account statement showing monthly job wages of $7.50 and an average monthly deposit amount of $394.17, over a six-month period. ECF No. 3. The Court finds that plaintiff has insufficient funds in his prison account to pay the entire fee and will therefore assess an initial partial filing fee of $78.83, which is twenty percent of plaintiff's average monthly deposit.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

**The Complaint and Exhibits**

Plaintiff, an inmate at Missouri Eastern Correctional Center ("MECC") in Pacific, Missouri, brings this action under 42 U.S.C. § 1983. Plaintiff alleges violations of his civil rights against eight defendants: (1) Ann Precythe (Director of Missouri Department of Corrections ("MDOC")); (2) Jeff Norman (Deputy Division Director for MDOC); (3) Richard Adams (MECC Warden); (4) Sergeant Unknown Word; (5) Sergeant Unknown Njucko; (6) Diana Simmerly (MECC Assistant Warden); (7) Correctional Officer ("CO") Bradley Jackman; and (8) Sergeant Unknown Frayley. ECF No. 1 at 1-5. All defendants are employees of MDOC and are sued in both their individual and official capacities. All defendants, except Precythe and Norman, work at MECC. *Id.*

Plaintiff alleges that his "rights of due process and equal protection" were violated when defendants used excessive force on him in the morning of August 7, 2019, at MECC. *Id.* at 6. Plaintiff describes the incident as follows: "At 3 House gate plaintiff was approach[ed] by CO

Bradley & other official assaulted (i.e. mace accessively [sic] & slammed plaintiff on his head along with staff put their knee on plaintiff neck that killed plaintiff (i.e. unresponsive pulse) … plaintiff was revived at hospital." *Id.* at 7. According to plaintiff, "Missouri Department of Corrections Officials" alleged that he was under the influence of drugs at the time of the incident, but plaintiff states that he was not, and he refers to "negative results." *Id.* at 6-7.

It is unclear from the pleadings exactly which defendants are alleged to have done what. Plaintiff says MDOC officials "sprayed" him and caused him physical injury, and "COs" put their knee on his neck. *Id.* at 6. Plaintiff also writes: "Each Defendant (i.e. COs, Sergeant, Lieutenant [)] caused physical injury to plaintiff (i.e. slammed him on his head[,] put knee on plaintiff neck that killed plaintiff [.)] The higher official [Assistant] Warden, Warden, & Jeff Norman[,] along [with] Ann Precythe[,] ignore[d] their actions threw [sic] the IRR Process." *Id.* at 6. As a result of this assault, plaintiff asserts that he suffered neck, head, chest, and back injuries, in addition to burst blood vessels. *Id.* at 6.

Plaintiff attached multiple exhibits to his complaint, which are considered part of the pleadings. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes"). Plaintiff included copies of grievance filings related to the August 2019 incident. ECF Nos. 1-1. Plaintiff filed grievance MECC-19-866 complaining about staff violating "policies, laws, rules and regulation;" asserting that an investigator did not take photos after the assault incident; and alleging that an investigator was "concealing and suppressing material facts of violence." *Id.* at 1, 3-4. The grievance was denied by "Richard Jennings, Warden"[1] with the following summary:

---

[1] Although this grievance filing names the MECC Warden as 'Richard Jennings,' plaintiff names defendant Richard Adams as the MECC Warden and this name is consistent with the Missouri Department of Corrections website listing for the current warden of MECC. *See Warden Listing*, Mo. Dep't of Corr., https://doc.mo.gov/facilities/adult-institutions/warden-listing (last visited Nov. 9, 2020).

> On August 7, 2019 you were under the influence of an intoxicating substance and refused several directives to submit to restraints. You became combative and pepper spray was applied by two staff members during a spontaneous use of force. A review of video footage and the Use of Force events was conducted and it was found that the minimum amount of force necessary was utilized to gain control of the situation.

*Id.* at 4. An appeal of this grievance was denied by defendant Jeff Norman. *Id.* at 2.

Plaintiff filed a second grievance, MECC-19-867, contesting a conduct violation he received for being under the influence of an intoxicating substance on August 7, 2019. *Id.* at 7-11; *see also* ECF No. 1-2 at 13. The Conduct Violation Report was summitted by CO Bradley Jackman, stating:

> I … observed Offender Reynolds Deavonie staggering and with slurred speech walking out of the gate. I then instructed offender Reynolds to report to my location and to stand by the fence which he failed to comply with. He then kept stating comments but [we] were not able to identify what he was saying because of the intoxicating substance. This places him in violation of 11.5 being observed under the influence of an intoxicating substance.
>
> NOTE: Offender Reynolds action resulted in a unplanned use of force.

ECF No. 1-2 at 13. Plaintiff claimed that he was "wrongly accused" in this violation report and that a "urine sample proved it." ECF No. 1-1 at 8. Plaintiff's initial grievance was denied by defendant Assistant Warden Diana Simmerly, among others. *Id.* at 9. Subsequently, the grievance was also denied by "Richard Jennings, Warden" with the following summary:

> On August 7, 2019 you were observed staggering out of the HU3 gate and your speech was incoherent. You were unable to follow staff directives and a spontaneous use of force was necessary to gain control of you. Offender Rule Book states that being found ***by observation*** or test to be under the influence warrants an 11.5 violation.

*Id.* at 8 (emphasis in original). Finally, the appeal of this grievance was denied by defendant Jeff Norman. *Id.* at 11.[2]

---

[2] Plaintiff also included exhibits on grievance MECC-19-773, which seems to be unrelated to the issues of this case as they deal with medical treatment following a tooth extraction. ECF No. 1-1 at 5-6.

Plaintiff also attached copies of medical records regarding the alleged assault incident. ECF No. 1-2. Notes from the MDOC nurse who was first on the scene of the incident describe plaintiff as "gray in color and shallow breathing." *Id.* at 3. Another nurse reported to the medical staff that a "use of force," both physical and chemical, had been used on plaintiff by custody staff. *Id.* at 5. She summarized the incident as follows:

> Offender observed "stumbling and walking with unsteady gait," custody attempted to question offender, offender attempted to run, was forced to [ground] by officer. Offender at that time was unresponsive with no heartbeat … Offender had no spontaneous resps or palpable heartbeat. CPR had been initiated by custody prior to medical's arrival. EMS called. Narcan 4mg given – total of 16mg. Respirations assisted by AMBU bag/oxygen. Had non-effective respirations, but no heart beat. After approx 60 compressions, continued respiratory assist with AMBU bag, and total of 4 Narcan doses of 4mg (16mg total) … Offender became again responsive. Noted that offender also had copious amts of thick, frothy saliva/phlegm coming from mouth … When offender regained responsiveness, it was observed that offender took deep gasping breath, and had audible "gurgling" for short time.

*Id.* at 10. The MDOC doctor who completed a short exam at the scene, before transport to the hospital, reported that "when medical director asked [patient] what happened, [patient] replied that he had taken sleeping pills." *Id.* at 8. When the emergency medical officials arrived, plaintiff complained of shortness of breath and neck pain. *Id.* at 6-7. Plaintiff "was sitting on [a] bench" and showed "no signs of distress;" however, it was noted that he had "broken blood vessels visible in sclera" of both eyes. *Id.* at 7.

Plaintiff alleges that a "UA" (presumably urine analysis) was "negative" – proving that he was not under the influence. *Id.* at 9-10, 12. However, according to plaintiff, MDOC will not give him records proving this negative result. *Id.* at 8.

For relief, plaintiff seeks a total of 42.5 million dollars in actual and punitive damages. *Id.* at 9.

**Motion for Preliminary Injunction and Temporary Restraining Order**

Plaintiff filed a document titled "Motion for Preliminary Injunction and Temporary Restraining Order" at the same time as his complaint filing. ECF No. 5. The document does not argue for the requested relief, instead it seems to be a proposed show cause order with blank fields for the presiding judge to sign. *Id.* The document directs defendants and all MDOC officials to justify why plaintiff should not get home furlough as a result of the alleged assault he suffered in August 2019. *Id.* at 1. Plaintiff states that he "doesn't trust" defendants and he is afraid for his life based on the past alleged incident. He also asserts that defendants have been "messing" with his legal mail and email and have been putting him in the hole for frivolous writeups. *Id.*

**Discussion**

**I. Denial of Injunctive Relief**

"Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.,* 640 F.2d 109, 113 (8th Cir. 1981). These factors are also considered to determine the propriety of a temporary restraining order. *See S.B. McLaughlin & Co., Ltd. v. Tudor Oaks Condo. Project,* 877 F.2d 707, 708 (8th Cir. 1989).

"In balancing the equities no single factor is determinative." *Dataphase,* 640 F.2d at 113. The relevant inquiry is "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id.* The burden of proof is on the party seeking injunctive relief. *Gelco Corp. v. Coniston Partners,* 811 F.2d 414, 418 (8th Cir. 1987).

After weighing the *Dataphase* factors listed above, the Court finds that plaintiff has failed to demonstrate at this stage of the proceedings that he is likely to succeed on the merits of his claims and that he will suffer an immediate and irreparable injury if I do not grant the requested relief. Plaintiff's statements seeking relief are wholly conclusory and lacking in any factual support. Plaintiff provides no evidence that his life is any imminent danger – his argument is founded on alleged past harm. Nor is there any evidence that if the Court does not grant the immediate relief plaintiff requests, that there will be any irreparable injury to plaintiff. As such, plaintiff's motion for preliminary injunction and temporary restraining order will be denied.

## II. Amended Complaint Instructions

Upon review under 28 U.S.C. § 1915(e)(2), the Court finds multiple deficiencies in plaintiff's pleadings. However, because plaintiff is self-represented and has presented serious allegations to the Court, he will be allowed to amend his complaint on a court-provided form in accordance with the instructions set forth below. Plaintiff should consider the following issues when filing his amended complaint.

First, "[l]iability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). To be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights. *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985).

Here, plaintiff alleges he suffered excessive force at the hands of the defendants who are correctional officers and sergeants. This includes defendants Word, Njucko, Jackman, and Frayley. However, CO Jackman is the only one of these defendants specifically named in the facts of the complaint. Plaintiff must plead facts to show that a specific defendant was personally involved in or directly responsible for the force used on him.

Second, "[Correctional] Officers may reasonably use force in a good-faith effort to maintain or restore discipline but may not apply force maliciously and sadistically to cause harm." *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)) (internal quotation marks omitted). "Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically." *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008) (citing *Hudson*, 503 U.S. at 9). The test for reasonableness or the good-faith application of force depends on the following:

> whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury.

*Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002) (citing *Hudson*, 503 U.S. at 7).

Here, plaintiff alleges in a conclusory manner that excessive force was used on him, but the facts plead must be enough to state a facially plausible claim that the force used was malicious and sadistic. Although plaintiff asserts that medical tests show he was not under the influence of an intoxicating substance at the time of the incident, plaintiff does not deny "staggering" and having "slurred" or "incoherent" speech. ECF Nos. 1-2 at 13, 1-1 at 8. Nor does plaintiff deny refusing "several directives to submit to restraints" or being "unable to follow staff directives," and becoming "combative." ECF No. 1-1 at 4, 8. Plaintiff also does not deny that he tried to run from defendants. ECF No. 1-2 at 10. Furthermore, although plaintiff asserts he died due to the "COs" knees on his neck, the medical records indicate that it took 4 doses of Narcan nasal spray to revive him – a life-saving medication approved by the FDA to temporarily stop or reverse the effects of an overdose. ECF No. 1-2 at 10; U.S. Food & Drug Administration, https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-providers/narcan-naloxone-nasal-spray-approved-reverse-opioid-overdose (last visited Nov. 1,

2020). In the test for reasonableness or the good-faith application of force, the Court will consider the objective need for force and the threat reasonably perceived by the correctional officers. As such, plaintiff should plead facts that relate to these factors.

Third, as to the "higher official" defendants (MDOC Director Precythe, MDOC Division Director Norman, Warden Adams, and Assistant Warden Simmerly), it is not enough to claim that these defendants denied grievances or supervised other defendants. A prison grievance procedure is a procedural right only and does not confer upon an inmate a substantive right. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993); *see also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (agreeing with district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"). Plaintiff cannot hold defendants liable simply because they held supervisory or administrative positions. *See Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (claims sounding in respondeat superior are not cognizable under § 1983). Again, to state a cognizable § 1983 claim against defendants, plaintiff must allege that each defendant was personally involved in or directly responsible for the incidents that deprived him of his constitutional rights. *Martin*, 780 F.2d at 1338. Specifically, as to defendants Adams and Simmerly, "a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Reynolds v. Dormire,* 636 F.3d 976, 981 (8th Cir. 2011) (quoting *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987)).

Finally, the Federal Rules of Civil Procedure require litigants to formulate their pleadings in an organized and comprehensible manner, setting out their alleged claims and the facts supporting those claims as to each defendant in a simple, concise, and direct manner. *See* Fed. R. Civ. P. 8, 10. Even self-represented litigants are obligated to abide by these Rules. *McNeil v. United States*, 508 U.S. 106, 113 (1993).

Plaintiff should file an amended complaint that addresses these pleading deficiencies. Plaintiff is warned that the filing of an amended complaint **completely replaces** the original complaint, and so it must include all claims plaintiff wishes to bring. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect"). Any claims from the original complaint that are not included in the amended complaint will be deemed abandoned and will not be considered. *Id.* Plaintiff must submit the amended complaint on a court-provided form, and the amended complaint must comply with the Federal Rules of Civil Procedure.

In the "Caption" section of the court-provided form, plaintiff should clearly name every party he is intending to sue. Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"). If there is not enough room in the caption, plaintiff may add additional sheets of paper. However, all the defendants must be clearly listed. Plaintiff should fill out the complaint form in its entirety.

In the "Statement of Claim" section, plaintiff must identify exactly what claims he is bringing against each individual defendant. Federal Rule 8(a) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief. Rule 8(d) requires that each allegation of a pleading be simple, concise, and direct. Rule 10(b) requires that all averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances.

Plaintiff must allege facts showing how a particular defendant's acts or omissions violated his constitutional rights. It is not enough for plaintiff to make general allegations against all the defendants as a group. Rather, plaintiff needs to provide the role of each named

defendant in this case, in order that each specific defendant can receive notice of what he or she is accused of doing. *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (stating that the essential function of a complaint "is to give the opposing party fair notice of the nature and basis or grounds for a claim").

After receiving the amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915. Plaintiff's failure to make specific and actionable allegations against any defendant will result in that defendant's dismissal from this case.

**III. Denial of Appointment of Counsel**

Plaintiff has also filed a motion for appointment of counsel. ECF No. 4. The appointment of counsel for an indigent plaintiff in a civil matter lies within the discretion of the Court. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006). There is no constitutional or statutory right to appointed counsel in civil cases. *Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003, 1004 (8th Cir. 1984). Once the plaintiff has alleged a *prima facie* claim, the Court must determine the plaintiff's need for counsel to effectively litigate his claim. *In re Lane*, 801 F.2d 1040, 1043 (8th Cir. 1986). The standard for appointment of counsel in a civil case is whether both the plaintiff and the Court would benefit from the assistance of counsel. *Edgington v. Mo. Dep't of Corr.*, 52 F.3d 777, 780 (8th Cir. 1995), *abrogated on other grounds by Doe v. Cassel*, 403 F.3d 986, 989 (8th Cir. 2005). This determination involves the consideration of several relevant criteria, including "the factual complexity of the issues, the ability of the indigent person to investigate the facts, the existence of conflicting testimony, the ability of the indigent person to present the claims, and the complexity of the legal arguments." *Phillips*, 437 F.3d at 794 (citing *Edgington*, 52 F.3d at 780).

In this matter, the Court finds that appointment of counsel is not warranted at this time. The action appears to involve straightforward questions of fact rather than complex questions of

law. Further, the request for counsel is premature, as defendants have not yet been served, and the Court has not issued any Case Management Order. The Court concludes that the appointment of counsel would not be of sufficient benefit to the Court or to plaintiff at this time, and will deny plaintiff's motion for appointment of counsel, without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed *in forma pauperis* [ECF No. 2] is **GRANTED**. *See* 28 U.S.C. § 1915(a)(1).

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $78.83 within **twenty-one (21) days** of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 4] is **DENIED without prejudice**.

**IT IS FURTHER ORDERED** that plaintiff's motion for preliminary injunction and temporary restraining order [ECF No. 5] is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail to plaintiff a blank copy of the Court's Prisoner Civil Rights Complaint form.

**IT IS FURTHER ORDERED** that, within **thirty (30) days** of the date of this Order, plaintiff shall file an amended complaint on the Court-provided form and in compliance with the Court's instructions.

**IT IS FURTHER ORDERED** that upon submission of the amended complaint, the Court shall again review this action pursuant to 28 U.S.C. §1915.

**Plaintiff's failure to timely comply with this Order may result in the dismissal of this action, without prejudice and without further notice.**

Dated this 13th day of November, 2020.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE